IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT A. WALKER, ) | |
| ) | |
| Plaintiff, ) | Case No. CV07-264-N-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| CITY OF POST FALLS, et al, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court in the above-entitled matter is Defendants' motion for summary judgment (Docket No. 22). The Plaintiff has filed his response and the Defendants filed their reply. The matter is now ripe for the Court's review.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

Factual Background

Plaintiff Scott Walker's ("Walker") Complaint alleges certain state law causes of action for assault and battery, false imprisonment, and intentional infliction of emotional distress as well as causes of action for alleged violations of his constitutional rights pursuant to 42 U.S.C. 1983 against Defendants City of Post Falls, Post Falls City Police Department, Chief Clifford Hayes, Sgt. Chapman, Officer E. K. Anderson and Jane Doe Anderson (collectively referred to as "Defendants"). The Court has previously dismissed the state law causes of action based on Plaintiff's failure to file a notice of tort claim as required by state law. See Order, Docket No. 33. Therefore, the remaining claims to be addressed by the motion for summary judgment are the alleged § 1983 violations.

On or about June 16, 2005 at approximately 9:15 pm, off-duty probation officers Tammy Douglas and David Williams observed a possible driving under the influence ("DUI") based on erratic driving (crossing the center line several times and driving without headlights turned on) and called the Post Falls Police Department. The probation officers followed the suspect vehicle to the Slab Inn in Post Falls, Idaho. The driver exited the car and entered the establishment. Police officers Chapman and Andersen arrived on the scene and the probation officers identified the driver of the car inside the establishment as Plaintiff Walker. The officers asked Walker to exit the Slab Inn and administered a field sobriety test outside the establishment to determine if Walker was impaired when he was observed driving by the probation officers. Walker cooperated, but performed poorly on the field sobriety test.

The officers arrested Walker for violation of Idaho Code § 18-8004, driving under the influence. Officer Andersen agreed to transport Walker to the Kootenai County Jail while Officer Chapman coordinated the impound of Walker's vehicle. Andersen placed Walker in the back seat of the patrol car. After driving away, Officer Andersen realized the key to the vehicle that was going to be impounded was in Walker's pocket, so he returned to the Slab Inn with Walker. Officer Andersen asked Walker if he wanted his handcuffs released so he could retrieve the key from his pocket or if the officer could retrieve the key. Walker agreed Officer Andersen could retrieve the key from his pocket. Walker was removed from the patrol car to obtain the key. Walker is approximately 6'5" tall.

Andersen removed the key from Walker's pocket and handed it to Officer Chapman. At this point, Walker began yelling obscenities and became agitated. Officer Andersen asked Walker to get back into the car. Walker claims he was trying but with his 6'5" frame and being handcuffed, he could not easily get back into the officer's car. Both officers indicate in their reports and affidavits that Walker refused to obey him and continued yelling obscenities. Walker claims Officer Andersen tried to push him back into the car and the third time he attempted to push him, Walker braced himself and as he was falling backwards his foot came up to balance himself and in doing so came down on Officer Andersen's foot. Walker claims Officer Andersen then said

"You've done it now" and pushed Walker into the back of the car and tasered him in the inside of the right thigh. Plaintiff does not know how long the taser was activated, but said it was painful.

Pursuant to the police report by Officer Andersen and the declaration of Officer Chapman, there are more relevant facts than were included in Walker's declaration. Both officers claim that Officer Anderson told Walker to get in the car twice with no response by Walker. Officer Andersen tried to push Walker into the back seat. When Walker would not comply, Officer Anderson administered one leg strike to his right thigh. Walker started to go inside the car, but then stood up. Officer Andersen administered a second leg strike. Officer Andersen claims Walker raised his right foot and kicked Officer Andersen in the left shin. At that point Officer Andersen pushed him in the doorway and used his taser. Officer Andersen tasered Walker for approximately five seconds and Walker got into the car. Officer Andersen then transported Walker to the jail.

Walker's declaration does not include any information regarding his agitated state, foul language or leg strikes by Officer Andersen before he used his taser although he admits his was "admittedly under the influence" at the time he was arrested. See Affidavit of Scott Walker, Docket No. 29, p.2, ¶ 6. Plaintiff does admit in his responsive briefing that "he mocked the officers." See Response to Defendants' Motion for Summary Judgment, Docket No. 29, p.5.

Walker's blood alcohol level was tested at the jail and was reported to be above the legal limit at .161 and .174. Officer Andersen indicated in his report that Walker was uncooperative at the jail. Plaintiff does not contest this fact. Walker was cited for driving under the influence and battery of a police officer. A state court magistrate judge entered an order finding probable cause for the arrest of Walker on the charges of DUI and battery of a police officer. Walker later entered guilty pleas to charges of inattentive driving and disturbing the peace.

In Counts 2 and 3 of the Complaint, Plaintiff claims a violation of his civil rights pursuant to 42 U.S.C. § 1983 for false arrest and excessive force by Officer Andersen. In Count 4, Plaintiff alleges a § 1983 action against Defendant City of Post Falls for false arrest and excessive force. The Defendant moves for summary judgment arguing the officers are entitled to qualified immunity. Defendant also argues Plaintiff has failed to establish facts to support a § 1983 claim

against the municipality. Plaintiff claims based on the facts alleged in his affidavit, that the officers are not entitled to qualified immunity and that summary judgment is premature.

## Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth

---

[1] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Circuit cases are in accord.  See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

Analysis

1.  Is the motion for summary judgment premature?

Plaintiff makes reference in his responsive briefing that "if the Court does not feel as though Mr. Walker's affidavit is inherently sufficient to provide a genuine issue of material fact, then the court should continue this motion and allow the plaintiff to make a more informed response after completion of discovery."  Response to Defendants' Motion for Summary Judgment, Docket No. 29, p. 9.

The motion for summary judgment was filed on November 16, 2007.  No Rule 56(f) motion was filed by Plaintiff requesting more time to conduct discovery before responding to the motion. Plaintiff's obligations to respond to the motion with evidence are set forth in Fed. R. Civ. P. 56(e)(2):

> Opposing Party's Obligation to Respond.  When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against the party.

After a § 1983 defendant makes a properly supported motion for summary judgment based on qualified immunity, the plaintiff has the obligation to produce evidence of his own; the district

court cannot simply assume the truth of the challenged factual allegations in the complaint. Butler v. San Diego District Attorney's Office, 370 F.3d 956, 963 (9th Cir. 2004). In such a scenario, the burden of proof is shifted to the non-moving party, the Plaintiff in this case, to produce evidence sufficient to support a jury verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).

Plaintiff's statements as contained in his brief, if unsupported by the record, cannot be used to create a material issue of fact. Barnes v. Independent Auto. Dealers, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). Instead, the "party opposing summary judgment must direct [the court's] attention to specific triable facts." Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003). This requires the non-moving party to go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. Celotex Corp v. Catrett, 477 U.S. 317, 324 (1986)..

The Court will view the facts in a light most favorable to the non-moving party, but it is up to the non-moving party to provide adequate affidavits or other evidence to show a genuine issue of material fact exists. In this case, Plaintiff elected to respond to the motion for summary judgment without seeking time to conduct depositions and submitted an affidavit of Plaintiff. At no time since the motion was filed has Plaintiff sought to file a supplemental response based on his discovery that was ordered to be completed by April 30, 2008. It is not the Court's duty to order certain discovery in response to a motion for summary judgment; it is Plaintiff's obligation to respond to the motion in accordance with the applicable rules of procedure. The Court finds any failure to submit additional evidence for the Court to consider by April 30, 2008 is the fault of the Plaintiff, not the Court's. The motion for summary judgment is properly before the Court and will be decided on the record before the Court at this time.

Plaintiff's counsel is an experienced attorney who knows how to file a Rule 56(f) motion or a motion for leave to file a supplemental brief. To the extent that the statement in Plaintiff's briefing could be deemed a Rule 56(f) motion, the motion is denied as good cause has not been shown for the granting of such a motion.

### 2. § 1983 claims against Officers Andersen and Chapman

In reading the Plaintiff's complaint carefully, it does not appear that he has made a claim against Officer Chapman for a violation of his § 1983 rights. Accordingly, any § 1983 claims against Officer Chapman are hereby dismissed.

As to Counts 2 and 3 against Officer Andersen, the Court will evaluate whether Officer Andersen is entitled to qualified immunity for his actions. The Court will assume the facts presented by Plaintiff in his affidavit, but will also consider the undisputed facts of the officers that before Officer Andersen used his taser, he first tried two leg strikes in order to have Walker comply with his orders and that he was kicked or stepped on by Walker. Whether the kick or step by Walker was intentional or unintentional is not relevant to the qualified immunity analysis. The Court will also consider Plaintiff's own admissions that he was under the influence of alcohol at the time and was mocking the officers. Finally, the Court will apply the undisputed facts that both officers stated Plaintiff was using foul language and was agitated when he was removed from the police car and he failed to get back into the police care when asked to do so.

The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed parties. See Wyatt v. Cole, 504 U.S. 158, 161 (1992). To state a claim under § 1983, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law. Id. Acting under color of state law is "a jurisdictional requisite for a § 1983 action." West v. Atkins, 487 U.S. 42, 46 (1988). In this case, it is not disputed that Officer Andersen was acting under color of state law when he on duty and was responding to a call. Therefore, the question becomes, did Officer Andersen's actions deprive Walker of a right, privilege or immunity secured by the Constitution or federal law.

Defendant Andersen has raised the defense of qualified immunity. Police officers are entitled to "qualified immunity" for their actions within the scope of their employment "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). The purpose of qualified immunity is to "avoid excessive disruption of government and permit the

resolution of many insubstantial claims on summary judgment." Saucier v. Katz, 533 U.S. 194, 200, 202 (2001). On the other hand, this privilege allows redress where clear wrongs are caused by state actors. Id. "The privilege is an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. at 200-01. "As a result, [courts] have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation," long before trial. Id. at 201, see also Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) (citing Hunter v. Bryant, 502 U.S. 224 (1991)).

The initial question in determining whether an officer is entitled to qualified immunity is whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, (2001); Billington v. Smith, 292 F.3d 1177, 1183 (9th Cir. 2002). If not, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. If, however, a violation could be established under the facts presented, the next step is to determine whether the right was "clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208. Plaintiff bears the burden of establishing the rights violated were "clearly established." Houghton v. South, 965, F.2d 1532, 1534 (9th Cir. 1992).

"[S]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, the Court will analyze the constitutional rights Plaintiff alleges were violated by Officer Andersen.

In Count 2, Walker complains he was falsely arrested in violation of his Fourth Amendment right to be free from unreasonable seizure and the Fourteenth Amendment right to be free from a deprivation of his liberty. See Complaint, Docket No. 1, p. 5. It is undisputed that every citizen has a right to be free from an unlawful or false arrest. However, law enforcement officers have the

duty to arrest a person if they have probable cause to believe such person is committing a crime. Beck v. Ohio, 379 U.S. 89 (1964). An arrest is supported by probable cause if, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." Grant v. City of Long Beach, 315 F.3d 1081, 1085 (9th Cir. 2002) (citation and internal quotation marks omitted). "In evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest." Bingham, 341 F.3d at 950 (internal quotation marks omitted). "Probable cause is more than mere suspicion." Gasho v. United States, 39 F.3d 1420, 1428 (9th Cir. 1994). Whether an officer is entitled to qualified immunity in a probable cause case depends on the objective reasonableness of the arrest when viewing the totality of the "facts and circumstances actually known to the officer" at the time of the arrest Mendocino Envtl. Ctr. v. Mendocino County, 14 F.3d 457, 462 (9th Cir.1994).

In this case, Walker appears to contend Officer Andersen did not have probable cause to arrest him for DUI.[2] The undisputed record at the time of the arrest and the Plaintiff's own admissions to being under the influence do not support his argument. Probation officers observed Plaintiff driving erratically and without his headlights on so they reported the possible DUI to the police and followed the Plaintiff. The probation officers then identified Walker to the responding officers as the driver of the car they had observed. Plaintiff did not pass the field sobriety tests and when tested at the jail, his blood alcohol level was above the legal limit. A state magistrate judge found probable cause for the arrest. Accordingly, there is simply no evidence the arrest of Walker was unlawful or a false arrest by Officer Andersen.

Having found no violation of a constitutional right, the qualified immunity analysis ends and the Officer is entitled to summary judgment on Count 2.

As to Count 3, Walker claims Officer Andersen violated his Fourth Amendment right to be free from the use of excessive force and unreasonable seizure and his Fourteenth Amendment right

---

[2]Since the initial arrest was for DUI, the Court need not address whether there was probable cause to arrest for battery to a police officer that arose after the Plaintiff had been arrested for the DUI.

to be free from bodily security and liberty.  See, Complaint, Docket No. 1, p. 6.  The Court will analyze if the qualified immunity defense applies to Count 3.

In Graham v. Connor, 490 U.S. 386 (1989), the Supreme Court held the proper test for an excessive force claim related to a traffic arrest is whether the seizure of the person was objectively reasonable under the Fourth Amendment and not the standard for a substantive due process claim under the Fourteenth Amendment.  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396.  Accordingly, this Court will apply the "objectively reasonable" test to the undisputed facts in this case.  In Gregory v. County of Maui, ___ F.3d ___, 2008 WL 1869007 (9th Cir. 2008), the Ninth Circuit recently summarized the analysis for a excessive force claim:

> To determine whether the force used by the officers was excessive under the Fourth Amendment, we must assess whether it was objectively reasonable "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396, 109 S.Ct. 1865 (internal quotation marks omitted). In this analysis, we must consider the following factors: (1) the severity of the crime at issue; (2) whether [Plaintiff] Gregory posed an immediate threat to the safety of the officers or others; and (3) whether [Plaintiff] Gregory actively resisted arrest. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 921 (9th Cir.2001).

The question for this Court is did Officer Andersen use excessive force in violation of the Fourth Amendment in attempting to get Walker back into the patrol car?  Officer Andersen did not immediately engage the use of his taser to subdue Walker.  Instead, the undisputed facts establish that Walker was agitated and using foul language towards the officers, he did not comply with Officer Andersen's requests to get back into the car, he did not comply after two leg strikes by the officer, he kicked or stepped on the Officer, and he was resisting the Officer's attempts to put him back in the patrol car.  Only then did Officer Andersen believe use of his taser was necessary to control Walker.

The severity of the DUI and the threat Walker posed were not overwhelming, but Walker's failure to comply with Officer Andersen's instructions even after the leg strikes, supports that the use of the taser was proportionate to the threat Walker posed and the response necessary to get

MEMORANDUM ORDER - Page 10
08ORDERS\WALKER_SJ.WPD

compliance from a person resisting the officer's instructions. "Police officers . . . are not required to use the least intrusive degree of force possible . . . [T]he inquiry is whether the force that was used to effect a particular seizure was reasonable." Forrester v. City of San Diego, 25 F.3d 804, 807-08 (9th Cir. 1994). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation." Graham at 396-97. In this case, the undisputed facts establish the use of force escalated only after Walker's failure to comply and the force used was objectively reasonable for the situation presented. The Court finds based on the undisputed facts and facts presented by Plaintiff that no constitutional violation of excessive force occurred. Accordingly, the qualified immunity defense analysis ends and this count must be dismissed against the officer.

   3. § 1983 Claim against City of Post Falls, Post Falls City Police Department and Police Chief Clifford Hayes.

While the Complaint names as defendants the city, the police dept and the chief of police, Count 4 is directed at only the City of Post Falls. Accordingly, the claims against the police department and police chief are dismissed. Plaintiff claims the City of Post Falls "grossly failed to train its police officers in the fundamental law of arrest and use of force in effecting arrest in that this defendant permitted, tolerated, and ratified a pattern and practice of unjustified, unreasonable, and illegal arrests by police officers. . . ." Complaint, Docket No. 1, p. 7.

   To make a claim against a municipality for a § 1983 violation, four criteria must be satisfied:

   (1) That [the Plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the Plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation.."

Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 389-91 (1989)).

   A municipality may not be held liable under § 1983 solely because it employed a constitutional wrongdoer. Monell v. Dept. of Social Services, 436 U.S. 658 (1978). Furthermore,

a municipality cannot be held liable under § 1983 where no constitutional violation has occurred. Sweaney v. Ada County, 119 F.3d 1385, 1392 (9th Cir. 1997).

In this case, the Court has determined that no violation of a constitutional right occurred, therefore, the claims against the municipality must also be dismissed as a matter of law. Moreover, the Court finds Plaintiff has failed to carry his burden to establish via evidence that the municipality had a policy or custom which was the moving force behind the alleged constitutional violations. A plaintiff is required to provide evidence of a "formal policy" or "widespread practice" in order for a municipality or local government unit to be held liable under § 1983. Nadell v. Las Vegas Metropolitan Police Dept., 268 F.3d 924 929 (9th Cir. 2001). A custom may be inferred from "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir.1992). However, "[a] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." Davis v. City of Ellensburg, 869 F.2d 1230, 1233 (9th Cir.1989).

Here, Plaintiff alleges the police department failed to train or supervise its officers, but has produced no specific evidence of a training or supervision policy that led to a constitutional violation in this case. Nor has Plaintiff provided evidence that the actual training received created a widespread practice or repeated constitutional violations for which errant officers were not disciplined.[3] Because Plaintiff has not carried his burden, the claims against the City of Post Falls must be dismissed.

---

[3] Plaintiff alleges in his briefing that Officer Andersen has a pattern of using excessive force when arresting persons. The record is devoid of any facts other than the names of two unresolved lawsuits to support this claim. Plaintiff has provided no personnel records or other complaints of excessive force by Officer Andersen. Mere allegations are insufficient to survive summary judgment, so these allegations will not be considered by the Court.

Order

Being fully advised in the premises, the Court hereby orders that Defendant's motion for summary judgment on the remaining federal claims (Docket No. 22) is GRANTED and the matter is dismissed in its entirety.

DATED: **May 21, 2008**

Honorable Edward J. Lodge
U. S. District Judge